# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01861-SCT

*RICHARD LEON LONG*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/2009 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: GEORGE T. HOLMES |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/20/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On May 13, 2008, Richard Long was indicted for selling a controlled substance within 1,000 feet of a public park. After a one-day trial, Long was found guilty and sentenced as an habitual offender to life imprisonment without the possibility of parole. On appeal, Long raised several issues. However, because the issues lack merit, this Court affirms Long's conviction and sentence.

## FACTS AND PROCEEDINGS BELOW

¶2.　　On October 28, 2009, Long was tried for the sale of a controlled substance, diazepam (Valium), within 1,000 feet of a public park. At trial, Agent Jerry Rodgers of the Olive Branch Narcotics Division testified that he was acting in an undercover capacity when he met Long. At this initial meeting, Rodgers arranged to purchase Valium from Long. Rodgers also supplied Long with his phone number so that Long could contact him when the Valium pills were available. After meeting with Long, Rodgers conducted an initial investigation and discovered that Long lived approximately 100 feet from a fence that separated the Olive Branch City Park and the trailer park where the purchase would take place.

¶3.　　On January 22, 2009, Long called Rodgers to notify him that he had the pills and was ready to sell them as soon as the funds were available to Rodgers. Rodgers then notified his narcotics team that it was time to set up the controlled buy. The narcotics team wired Rodgers for audio and video, which began recording once Rodgers left to meet Long. Once Rodgers was in route to the buy location, he received a phone call from Long confirming the time and place they were to meet.

¶4.　　As Rodgers pulled into the trailer park, he noticed Long outside his trailer, flashing his vehicle's lights. Rodgers parked next to Long's vehicle. He then stepped out of his vehicle to carry out the transaction. Rodgers and Long had engaged in a short conversation when Long produced a small sack of pills. Rodgers then counted out $100 and the exchange was made. After the exchange, Long told Rodgers that he would be getting some more pills

in and told Rodgers to give him a call. After the transaction was complete, Rodgers got back into his vehicle and drove off.[1]

¶5.     Rodgers and the narcotics team then met at the Olive Branch Narcotics Division, where the bag of pills was kept until it was delivered to the Mississippi Crime Laboratory by Officer Cliff Roberts of the Olive Branch Police Department. Once at the lab, Erik Frazure, a forensic chemist specializing in drug analysis, tested the pills Rodgers had bought from Long. Frazure concluded that the pills were, in fact, diazepam, which is sold under the trade name, Valium, a schedule IV controlled substance.

¶6.     At trial, the prosecution rested its case-in-chief after Frazure's testimony. The defense then moved the trial court for a directed verdict, alleging that the prosecution had failed to prove a prima facie case that Long had sold a controlled substance within 1,000 feet of a public park. The trial court subsequently denied Long's motion, finding that the prosecution had met the requirements for the matter to go to the jury. Following the trial court's denial, the defense rested its case-in-chief without presenting any evidence. Counsel for both sides then gave closing arguments. Subsequently, the jury found Long guilty of selling a controlled substance within 1,000 feet of a public park. The trial court then excused the jury before the sentencing phase of the trial.

¶7.     At sentencing, the prosecution presented argument alleging that Long had been indicted as an habitual offender under Mississippi Code Section 99-19-83, citing Long's two

---

[1] Rodgers and the narcotics team did not arrest Long immediately. Instead, Rodgers conducted a more extensive investigation because he wanted to find out who was supplying Long. After a month of investigating, Rodgers concluded that Long was ordering the pills through the mail, so he decided it was time to arrest Long.

prior felonies: (1) sexual assault on a child, and (2) aggravated incest with his own child. *See* Miss. Code Ann. § 99-19-83 (Rev. 2007). Regarding the conviction for aggravated incest with his own child, Long contested and argued, "I do not have a daughter. I have a 23-year-old son. I was 25 years old at the time. The girl was 17. I didn't know it." According to Long, the girl was not his daughter at the time of the offense, she was the daughter of a woman that he married three years later. However, the trial judge found that the certified documents from Colorado:

> clearly confirm that Mr. Long has been convicted on two separate occasions arising out of two separate indictments for felony crimes, and on each crime, he was sentenced to in excess of one year in the state penitentiary.
>
> . . . .
>
> I will note that certainly [the court] will agree with Mr. Murphy's[, counsel for the State of Mississippi,] characterization of the case law in that at least one of those crimes constitute a crime of violence, therefore, mandating that this court sentence Mr. Long to a term of life imprisonment without the possibility of parole.

The trial court, out of precaution, proceeded by performing a proportionality analysis. The trial court stated:

> I do find that this sentence is not disproportionate to the crimes committed by a person in Mr. Long's position. First and foremost, he has committed a sale of a controlled substance, Valium, Diazepam. He's been convicted. . . . Certainly, that is in and of itself an egregious crime. . . . To compound that, this was done within . . .well within the distance of a park, which leads to the applicable enhancement, if this were not an (Section 99-19-]83 case, which would double the maximum sentence.
>
> . . . .
>
> I will note . . . that he was looking at a possible 40-year sentence for the crime that he was convicted of today, that he has two prior heinous convictions, a pending indictment on a violent crime . . . For those and other reasons,

4

certainly not limited to those reasons, I find that the punishment mandated in Section 99-19-83 is not disproportionate to the sentenced imposed thereon, and therefore, Mr. Long's sentence will be a term of life imprisonment in the Mississippi Department of Corrections to be served as a Section 99-19-83 habitual offender.

¶8. On November 3, 2009, Long filed his motion for judgment notwithstanding the verdict or for a new trial. On December 9, 2009, the trial court denied Long's motion. Thereafter, Long timely filed his appeal.

## DISCUSSION

¶9. Long raises five issues on appeal:

(1) Whether the verdict is against the overwhelming weight of the evidence;

(2) Whether inflammatory closing argument by the State requires a new trial;

(3) Whether the State presented competent proof of the alleged sale within 1,000 feet of a public park;

(4) Whether the trial court should have developed more proof regarding Long's prior convictions at sentencing; and

(5) Whether Long's sentence is illegal or otherwise unconstitutionally disproportionate.

¶10. Based on the record before this Court, we affirm Long's conviction and sentence.

*I. Whether the verdict was against the overwhelming weight of the evidence.*

¶11. In determining whether a jury verdict is against the overwhelming weight of the evidence, "this Court will only overturn a jury verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." **Boyd v. State**, 977 So. 2d 329, 336 (Miss. 2008) (citing **Taggart v. State**, 957 So. 2d 981, 987 (Miss. 2007)). When making this determination, "the evidence

5

should be weighed in the light most favorable to the verdict." ***Bush v. State***, 895 So. 2d 836, 844 (Miss. 2005) (citing ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997)). If, in viewing the evidence in the light most favorable to the verdict, allowing the verdict to stand would constitute an unconscionable injustice, the proper remedy is to grant a new trial. ***Bush***, 895 So. 2d at 844-845.

¶12.    Viewing the evidence in the light most favorable to the State and resolving all reasonable inferences in favor of the State, this Court finds that the jury verdict was not against the overwhelming weight of the evidence. The surveillance video makes clear the fact that Long sold Valium to Rodgers on January 22, 2009, at the location alleged in the indictment.

¶13.    Long argued that the surveillance video was unreliable because it did not show any drugs or money being exchanged and the alleged seller was shown only for a brief moment. Although the man selling the Valium was shown on the video for only a brief moment, Rodgers testified that the man on the video was Long. Furthermore, while no money or drugs are seen on the video, Rodgers testified that he counted out $100 and exchanged the money for the pills.[2] The pills were then delivered to the Mississippi Crime Laboratory, where Erik Frazure determined that the pills were, in fact, Valium, a controlled substance.

¶14.    Although the surveillance video fails to show any money or drugs being exchanged, Rodgers testified that Long sold Valium to him for $100. Therefore, this Court finds that the verdict is not against the overwhelming weight of the evidence. Accordingly, we affirm the

---

[2] While the video does not show money being exchanged for the pills, the audio portion of the video reveals the sound of money being counted and pills rattling.

trial court's denial of Long's motion for judgment notwithstanding the verdict and for a new trial.

*II. Whether inflammatory closing argument by the State requires a new trial.*

¶15. Long complains that the prosecutor's closing remarks equated to a "send-a-message" argument, which this Court consistently has held to be improper. ***Brown v. State***, 986 So. 2d 270 (Miss. 2008). The language specifically complained of reads as follows:

> You know, its not a murder case, but the sale of drugs, the illegal sale of drugs is important, ladies and gentlemen. It's important to control it, and you do so by stopping those that get caught selling drugs illegally, which is exactly what this man did. The defendant sold drugs illegally and – and he's guilty, and it's time for him to be held accountable. He's selling drugs near a park as you pass through on your way to I don't know where . . . . I'm just glad we caught him when we did.

¶16. "Depending upon the facts and circumstances of each case, 'send-a-message' arguments may – standing alone – constitute reversible error." ***Brown***, 986 So. 2d at 275. In determining whether the argument complained of constituted an improper "send-a-message" argument, this Court will apply the two-prong test set forth in ***Spicer v. State***, 921 So. 2d 292 (Miss. 2006). However, the Court must first determine whether defense counsel objected to the statement. ***Id.*** at 317. (***Spicer*** further provided that, despite the absence of objection, this Court will not procedurally bar the issue where "the send-a-message argument was so 'inflammatory' that the trial judge should have objected on his own motion.) ***Id.*** Next, this Court must determine whether, in light of the surrounding circumstances, defense counsel invited the statement. ***Id.*** at 318.

¶17. If the appellant can pass these threshold inquires, ***Spicer*** states that this "Court must determine (1) whether the remarks were improper, and (2) if so, whether the remarks

7

prejudicially affected the accused's rights." *Id.* To clarify the *Spicer* test, *Brown* provided, "to meet the second prong of the test, we hold that it must be clear beyond a reasonable doubt that, absent the prosecutor's inappropriate comments, the jury *would* have found the defendant guilty." *Brown*, 986 So. 2d at 276 (emphasis original).

¶18. To explain the problem with "send-a-message" arguments, this Court stated:

> The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not he or she believes the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.

*Williams v. State*, 522 So. 2d 201, 209 (Miss. 1988).

¶19. This Court finds that Long cannot pass the threshold inquiries set forth in *Spicer*, and therefore, Long's assignment of error is without merit. Admittedly, Long failed to object during the State's closing argument. Also, the statement was not so "inflammatory that the trial judge should have objected on his own motion." *Spicer*, 912 So. 2d at 317. In this case, the statement complained of does not rise to the level of those statements which this Court has found to be improper. *See, e.g.*, *Payton v. State*, 785 So. 2d 267, 270 (Miss. 1999); *Evans v. State*, 725 So. 2d 613, 675 (Miss. 1997); *Chase v. State*, 699 So. 2d 521, 537 (Miss. 1997); *Wilcher v. State*, 697 So. 2d 1123, 1139 (Miss. 1997); *Hunter v. State*, 684 So. 2d 625, 637 (Miss. 1996); *Williams v. State*, 522 So. 2d 201, 209 (Miss. 1988).

¶20. In this case, the State's remarks were simply reiterating the jury's duty set forth in the jury instructions. The members of the jury were charged with the duty to make a finding of

8

guilt based on the testimony and evidence presented at trial. By stating that the illegal sale of drugs must be controlled, "which is exactly what [Long] did," the State was suggesting that the jury find Long guilty if they believed that the evidence and testimony had proved that Long sold drugs illegally. Therefore, the State's closing remarks, taken in context, were not "so 'inflammatory' that the trial judge should have objected on his own motion." *Spicer*, 921 So. 2d at 317 (quoting *Payton*, 785 So. 2d at 270). Accordingly, we find Long's assignment of error to be without merit.

*III. Whether the State presented competent proof of the alleged sale within 1,000 feet of a public park.*[3]

¶21.    Here, Long claims that the State did not present sufficient evidence that the alleged sale occurred within 1,000 feet of a public park. However, Long's claim is actually two-fold. Although Long contends that the State failed to present competent evidence that the sale occurred within 1,000 feet of a public park, the basis of that claim is that the testimony provided by the State's star witness was insufficient because he did not have personal knowledge that the sale occurred within 1,000 feet of a public park. Thus, Long claims that Rodgers "cannot testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." M.R.E. 602.

¶22.    In considering whether the evidence was sufficient to uphold the jury's verdict, this Court must determine whether the evidence shows "beyond a reasonable doubt that [the]

---

[3] While this issue pertains only to whether or not the sentence enhancement under Mississippi Code Section 41-29-142 applies, it should be noted that this issue is considered an essential element that must be submitted to the jury and proven beyond a reasonable doubt. *See* Miss. Code Ann. § 41-29-142 (Rev. 2009); *Brown v. State*, 995 So. 2d 698 (Miss. 2008) (discussing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

9

accused committed the act charged and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Bush*, 895 So. 2d at 843 (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

¶23. Considering the evidence in the light most favorable to the State, this Court finds that there was sufficient evidence to convict Long of selling a controlled substance within 1,000 feet of a public park. When asked what property borders the trailer park where Long sold Rodgers the Valium, Rodgers testified that the trailer park "meets up right there at the city park, the public park that we have in Olive Branch. It's about 100 feet right behind [Long's] house." Rodgers further testified that the park is used for softball, fishing, walking, and "just city park stuff." The State also published the surveillance video to the jury while Rodgers explained that the bright lights seen in the background were the lights from the city park's softball fields. He further explained that the line seen running perpendicular to the softball field lights was the fence that separates the trailer park and the city park ninety-six feet away from the sale location.

¶24. In light of these facts, we find that Rodgers did have personal knowledge that the park was, in fact, a "public park" and that Long sold Rodgers a controlled substance within 1,000 feet of a public park. Furthermore, this Court finds that any rational juror could have found beyond a reasonable doubt that all the elements had been met by the State in proving the sale

10

of a controlled substance within 1,000 feet of a public park. Accordingly, this Court finds

Long's argument and assignment of error to be without merit.

*IV. Whether the trial court erred in sentencing Long as a violent offender under Mississippi Code Section 99-19-83.*

¶25.    Mississippi Code Section 99-19-83 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-83 (Rev. 2007).

¶26.    It is well-settled in this state that sentencing is within the complete discretion of the trial court. ***Hoops v. State***, 681 So. 2d 521, 537-538 (Miss. 1996) (citing ***Reynolds v. State***, 585 So. 2d 753, 756 (Miss. 1991)). "Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." ***Id.*** at 538 (citing ***Flemming v. State***, 604 So. 2d 280, 302 (Miss. 1992)). Pursuant to Mississippi Code Section 99-19-83, the maximum term of life imprisonment will be imposed if the State can prove beyond a reasonable doubt that the defendant has previously been convicted of two or more felonies on charges separately brought and arising out of separate indictments at different times, that the defendant was sentenced to and served separate terms of one year or more in any state or federal penal institution, and that at least one such felony was a crime of violence. ***Bradley v. State***, 934 So. 2d 1018, 1028 (Miss. Ct. App. 2005), *reh'g denied*, *cert. denied*, 933 So. 2d 982 (Miss. 2006)). "The most common

11

method of demonstrating prior convictions for enhancement purposes is by introducing original or certified copies of commitment papers." ***Davis v. State***, 995 So. 2d 767, 774 (Miss. Ct. App. 2008) (quoting ***Frazier v. State***, 907 So. 2d 985, 991 (Miss. Ct. App. 2005)). Based on the State's presentation of evidence, the trial court did not abuse its discretion in sentencing Long as an habitual offender to life imprisonment.

¶27. At sentencing, the State presented the trial court with certified copies of Long's commitment papers from the State of Colorado showing that Long had been convicted of three felonies on two separate occasions and had served separate terms of more than one year each in prison. On May 24, 1996, Long was found guilty of two counts of sexual assault on a child, and was sentenced to six years in prison for each conviction, with the sentences to run concurrently. The sentencing court's order stated that Long had committed the offenses charged on January 25, 1991. These same documents also reflect that Long pleaded guilty to aggravated incest with his own child in Adams County, Colorado, on February 25, 1998, with an offense date of September 28, 1989. Long subsequently was sentenced to twelve years in prison for aggravated incest with his own child.

¶28. In addition, Long admits to having been convicted of these three felonies. However, Long argues that his Colorado conviction for sexual assault of a child was consensual sex with a seventeen-year-old. He further argues that the alleged victim in his Colorado conviction for aggravated incest with his own child was not his daughter. Thus, Long takes the position that the trial court erred by not fully investigating the nature of his prior convictions, which were the basis of his sentence as an habitual offender.

12

¶29. Citing **U.S. v. Vigil**, 334 F. 3d 1215 (10th Cir. 2003), the State argued that, according to Colorado state law and federal law, aggravated incest constitutes a crime of violence. In **Vigil**, the district court determined that Colorado's aggravated incest statute[4] contained "as an element the threatened use of physical force. . . .The district court determined, however, that the requisite threat of force was implied whenever a parent inflicts sexual penetration on his or her child." **Vigil**, 334 F. 3d at 1219. **Vigil** also noted that "psychological brutalization is inherent in an offense like this and incest and rape are in the same category as both being crimes of violence inherently whether or not raw force is used." **Id.** at 1220 (quoting **U.S. v. Passi**, 62 F. 3d 1278, 1282 (10th Cir. 1995)). The **Vigil** court found that even consent by the child-victim would not eliminate the risk of physical harm and that the age of the victim was immaterial. **Vigil**, 334 F. 3d at 1223-1224. Thus, the **Vigil** court held that aggravated incest constituted a "crime of violence." **Id.**

¶30. Therefore, it is the opinion of this Court that the State presented sufficient evidence to make the requisite showing that Long previously had been convicted of two or more felonies on charges separately brought and arising out of separate indictments at different times, that Long was sentenced to and served separate terms of one year or more in Colorado's penal institution, and that at least one conviction was for a crime of violence. Because sentencing is within the complete discretion of the trial court, this Court finds that the trial court did not err in sentencing Long as an habitual offender under Mississippi Code Section 99-19-83.

---

[4] Colo. Rev. Stat. § 18-6-302 (1)(b).

*V. Whether Long's sentence is unconstitutionally disproportionate.*

¶31.   Long now challenges his sentence, claiming that life in prison without the possibility of parole for the sale of a controlled substance within 1,000 feet of a public park is unconstitutionally disproportionate and constitutes cruel and unusual punishment. Recently, in *Cummings v. State*, our Court of Appeals found:

> [a]s a general rule, a sentence that does not exceed the maximum period of time allowed by statute will not be disturbed on appeal. *Wallace v. State*, 607 So. 2d 1184, 1188 (Miss. 1992). A sentence that is "grossly disproportionate" to the crime committed is subject to attack on Eighth Amendment grounds applying the proportionality test from *Solem v. Helm*, 463 U.S. 277, 290-291, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983); *but see Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (the *Solem* test should only apply when a comparison of the crime to the sentence leads to an inference of gross disproportionality).

*Cummings*, 29 So. 3d 859, 861 (Miss. Ct. App. 2010). Also, this Court "has consistently held that sentences under the habitual-offender statute do not constitute cruel and unusual punishment." *Id.* (citing *Huntley v. State*, 534 So. 2d 572, 575 (Miss. 1988); *Jackson v. State*, 483 So. 2d 1353, 1355 (Miss. 1986); *Baker v. State*, 394 So. 2d 1376, 1378-79 (Miss. 1981)). While the *Cummings* court held that Cummings's life sentence did not give rise to the inference of gross disproportionality, and thus, there was no need for an Eighth Amendment proportionality test, this Court notes that the trial court in the case before us conducted a proportionality analysis. *Cummings*, 29 So. 3d at 861. After conducting the proportionality analysis, the trial court found that Long's life sentence was not unconstitutionally disproportionate. *Id.*

## CONCLUSION

14

¶32. For the foregoing reasons, this Court finds that Long's conviction was not against the overwhelming weight of the evidence and that the State presented competent proof that the sale occurred within 1,000 feet of a public park. We further find that Long's sentence complies with Mississippi Code Section 99-19-83, is not unconstitutionally disproportionate and does not constitute cruel and unusual punishment under the Eighth Amendment. Therefore, we affirm the conviction by the Circuit Court of DeSoto County, as well as the sentence it imposed.

¶33. **CONVICTION OF THE SALE OF A CONTROLLED SUBSTANCE, DIAZEPAM, WITHIN ONE THOUSAND (1000) FEET OF THE REAL PROPERTY OF A PARK AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT THE ELIGIBILITY FOR PAROLE, AS A HABITUAL OFFENDER UNDER M.C.A. SECTION 99-19-83, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL PAY ALL COSTS OF COURT, $1,000 FINE PAYABLE WITHIN NINETY DAYS (90) FROM HIS RELEASE FROM INCARCERATION SHOULD THAT EVER OCCUR. APPELLANT SHALL BE GIVEN 250 DAYS CREDIT FOR TIME SERVED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**