# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00725-COA

SYNECCA MALONE A/K/A SYNECCA BRENDEN MALONE A/K/A SYNECCA B. MALONE     **APPELLANT**

v.

STATE OF MISSISSIPPI     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/04/2013 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, SALE OF ALPRAZOLAM, AND SENTENCED AS A HABITUAL OFFENDER TO TWENTY YEARS, AND COUNT II, SALE OF LESS THAN THIRTY GRAMS OF MARIJUANA, AND SENTENCED AS A HABITUAL OFFENDER TO THREE YEARS, TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $5,000 FINE |
| DISPOSITION: | AFFIRMED - 11/24/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., MAXWELL AND JAMES, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     Synecca Malone was convicted of selling Xanax and marijuana.  On appeal, he challenges the sufficiency and the weight of the evidence.  Malone was arrested when an informant made a controlled purchase of these drugs from him.  The informant and the surveilling officers testified about the buy.  And after the sale, an officer pulled over Malone and recovered the previously recorded buy money from his pocket.  After review, we find that there was sufficient evidence of Malone's guilt, and the verdict was not against the weight of the evidence.  We affirm.

## Facts and Procedural History

¶2.     On November 17, 2011, confidential informant Rodanté Waldrup[1] alerted Investigator Benjamin Swan of the Horn Lake Police Department a man named "QP" was selling marijuana and Xanax "bars."  So investigators had Waldrup make a controlled buy from QP. Waldrup contacted QP—later confirmed to be Malone—and Malone agreed to sell Waldrup an ounce of marijuana and four Xanax bars for $120.  The buy would take place at a local Pizza Hut the next day.

¶3.     On November 18, 2011, Waldrup met with Investigator Swan and Detective Nicki Pullen.  The officers searched Waldrup and his car for money and drugs and gave him $120 in cash, which had been photocopied to record the serial numbers.  They also wired him with electronic-surveillance equipment.

---

[1] Waldrup agreed to work as a confidential informant because he was trying to "work off" his own pending drug charges.

¶4. After the pre-buy procedures, officers followed Waldrup to the Pizza Hut but parked across the street to watch the transaction. The officers saw Waldrup park, get out of his vehicle, and get into Malone's gray Mustang with Malone. Just as discussed the day before, Malone sold Waldrup an ounce of marijuana and four Xanax tablets for $120. Waldrup then returned to his own car and met officers at a post-buy location. There, he handed over the drugs and gave a statement about the drug sale.

¶5. Meanwhile, Officer Charles Strauser was waiting to "initiate a traffic stop if the [drug transaction] occurred." Once he got the green light from Investigator Swan that the drug deal had happened, Officer Strauser pulled over Malone. When Officer Strauser asked Malone for his driver's license, Malone gave him an expired Tennessee ID. Officer Strauser determined Malone did not have a valid driver's license, so he arrested Malone. Officer Strauser then patted down Malone and felt something in his pants pocket. Malone gave the officer permission to search his pockets. Inside he found two bundles of cash—one containing $120 and the other $123. The $120 wad was the pre-recorded buy money.

¶6. After a jury trial, Malone was convicted of count I, sale of alprazolam (Xanax), and count II, sale of marijuana (less than thirty grams). Malone was sentenced as a habitual offender[2] to twenty years on count I and three years on count II, with the sentences to run concurrently. Malone appealed.

## Discussion

_____

[2] Miss. Code Ann. § 99-19-81 (Rev. 2015).

## I. Sufficiency of the Evidence

¶7. Malone first challenges the sufficiency of the evidence. When assessing the legal sufficiency of evidence, "we consider all evidence in the light most favorable to the State." *Grossley v. State*, 127 So. 3d 1143, 1147 (¶10) (Miss. Ct. App. 2013) (citing *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). "Credible evidence consistent with guilt must be accepted as true." *Duke v. State*, 146 So. 3d 401, 405 (¶15) (Miss. Ct. App. 2014). And "[w]e give the State the benefit of all favorable inferences reasonably drawn from the evidence." *Id.* The central inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

¶8. To prove sale of a controlled substance, the State had to show beyond a reasonable doubt Malone "knowingly or intentionally" sold a controlled substance. Miss. Code Ann. § 41-29-139 (Supp. 2015). Malone claims "Waldrup never testified specifically that Malone sold him or gave him any drugs." We disagree.

¶9. At trial, Waldrup gave the following testimony on direct examination:

> Q: [W]ere you able to set up a transaction with him that you told the Horn Lake Police Department about?
>
> A: Yes.
>
> Q: And what did you tell them you could buy from the individual named QP?
>
> A: Marijuana and pills.

. . . .

Q:    And before the deal, you had testified that you had negotiated with QP as far as what you were going to purchase and for what price, correct?

A:    That's right.

Q:    Did he give you what he told you he was going to give you during the transaction?

A:    Yes.

¶10.    Waldrup's post-buy written statement was also admitted in evidence and read aloud to the jury.  It said:

> I, Rodante Waldrup, made contract with detectives Swan and Pullen about purchasing marijuana from an unknown b/m that drives a gray Mustang with MS tag #MSQ 246.  I first made contact with detectives on 11/17/2011.  I then set up a deal with subject that goes by the name "QP" to buy 1 oz of marijuana and some bars on 11/18/2011 for $120.00.  I met with detectives Swan and Pullen on 11/18/2011 to do a buy bust.  They gave me money and video equipment.  I received a call from "QP[.]" He wanted to meet at Pizza Hut in Horn Lake to sell me 1 oz of weed and 4 "bars."  I met him at his car (Mustang) and [he] sold it to me.  I then met back with detectives and gave them the evidence.

After the statement was read aloud, Waldrup again confirmed it accurately depicted what happened.  From this statement alone, the jury was free to find Malone sold him what they had agreed to—an ounce of marijuana and four Xanax bars.

¶11.    In addition to Waldrup's testimony and the statement, a video recording was admitted. The video showed Waldrup enter Malone's gray mustang at the Pizza Hut.  Investigator Swan also testified he saw the two men meet inside Malone's car.  And immediately after the transaction, Waldrup handed over the drugs.  A crime-lab analyst testified the substances

5

were 22.9 grams of marijuana and four dosage units of alprazolam (Xanax). The cash found on Malone matched the recorded money given to Waldrup to make the buy. Viewing all evidence in the light most favorable to the State, there was sufficient evidence supporting the convictions.

## II. Weight of the Evidence

¶12. Malone also challenges the weight of the evidence against him. When considering a weight-of-the-evidence challenge, "we view the evidence in the light most favorable to the verdict." *Duke*, 146 So. 3d at 407 (¶22). "To disturb a verdict on this ground, we would have to find it was contrary to the overwhelming weight of the evidence and an unconscionable injustice." *Id*. As the reviewing court, "we accept all evidence consistent with the defendant's guilt as true 'together with any reasonable inferences that may be drawn from the evidence.'" *Id*. (quoting *Crook v. State*, 105 So. 3d 353, 364 (¶33) (Miss. Ct. App. 2012)). "Any factual disputes are properly resolved by the jury and do not mandate a new trial." *Id*.

¶13. Malone makes several arguments about the weight of the evidence. First, he argues the jury should have rejected Waldrup's testimony because he "had a strong motivation to testify in any way to get himself out of all the trouble he was in and to avoid prison." But "weighing the credibility of witnesses is the exclusive province of the jury." *Id*. at 406 (¶17). So it was the jury's prerogative to accept or reject Waldrup's testimony.

¶14. Malone also complains Waldrup's statement was written by Investigator Swan—a fact

Waldrup concedes. However, Waldrup explained he cannot read and write. And Waldrup testified Investigator Swan read the statement to him after it was written. Because it correctly depicted his involvement in the drug buy, he signed it. Waldrup again confirmed the statement's accuracy during trial after it was read aloud to him, without objection from Malone's counsel.

¶15. Malone's last complaint involves Officer Strauser's in-court identification of him. Though Malone deems the identification "highly questionable," he does not cite any authority or elaborate further. Our review shows Officer Strauser asked to step down from the witness stand to view the defendant. Neither side objected to this. He did this because, to him it appeared Malone had "lost a little weight" since he last saw him. After a closer look, Officer Strauser testified Malone was the person he pulled over and arrested.

¶16. Viewing the evidence in the light most favorable to the verdict, we cannot say the verdict was against the overwhelming weight of the evidence. We affirm.[3]

¶17. **THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SALE OF ALPRAZOLAM, AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY YEARS, AND COUNT II, SALE OF LESS THAN THIRTY GRAMS OF MARIJUANA, AND SENTENCE AS A HABITUAL OFFENDER OF THREE YEARS, TO RUN CONCURRENTLY TO THE SENTENCE**

---

[3] Malone also complains the State did not introduce the actual cash recovered from Malone. But photocopies of the cash were admitted. Though Malone's initial objection based on a lack of foundation was sustained, the State laid a proper foundation and photocopies of the cash were then admitted without further objection from Malone's counsel. Officer Strauser testified he recovered the $120 bundle from Malone's pants after getting permission from Malone. And the seized cash's serial numbers matched the marked money given to Waldrup to make the buy. The actual cash remained at the police department.

**IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $5,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**