# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01234-COA

**STANLEY LEE BRADLEY A/K/A STANLEY BRADLEY**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2015 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED ASSAULT AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $2,500 FINE |
| DISPOSITION: | AFFIRMED – 04/25/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. A jury sitting before the Forrest County Circuit Court found Stanley Lee Bradley guilty of aggravated assault. Bradley appeals, claiming the jury's verdict is contrary to the weight of the evidence. He also claims that the prosecution made an improper "send a message" closing argument. Finding no error, we affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     As of mid-February 2014, Bradley and Cassandra Baker had been dating for seven years. Cassandra's brother, David Baker, had been living with them for approximately one month. On February 15, 2014, a number of people visited their house to celebrate Cassandra's birthday. After everyone else left at approximately 9 p.m., Cassandra and David rested on separate couches in the living room. Bradley was not ready to end the evening. Although he had been drinking, Bradley left to drive around and visit some friends. Bradley told Cassandra that he would "be right back."

¶3.     Bradley "ended up at [Cassandra's] sister's house," where he continued to drink until he fell asleep on the couch. When he woke up "after two o' clock," he had a number of missed calls from Cassandra. Cassandra called him again while he was driving home. Bradley answered and explained that he was on his way home from her sister's house. Cassandra hung up. When she called again, he did not answer because he was nearly home. After parking and listening to music for "maybe three to five minutes," Bradley went inside.

¶4.     It is undisputed that Bradley and David got into a fight. It is also undisputed that Bradley stabbed David multiple times with a pocketknife. Other necessary details will be discussed below. David went to the hospital, where he was treated for one stab wound to his lower side[1] and four stab wounds to his upper back. Bradley was arrested and subsequently charged with aggravated assault. At trial, the prosecution called David, Cassandra, and the police officer who responded to Bradley's 911 call from a neighbor's house. Bradley chose

_____

[1] David's medical records were not introduced into evidence, but he described a surgical procedure to ensure that his bowels had not been perforated. He remained in the hospital for at least four days.

to testify after the prosecution rested its case-in-chief. Ultimately, the jury found Bradley guilty, and the circuit judge sentenced him to twenty years in the custody of the Mississippi Department of Corrections. Bradley appeals.

**ANALYSIS**

### I. Whether the verdict is contrary to the weight of the evidence.

¶5. Bradley argues that the circuit court erred when it denied his motion for a new trial, because the jury's verdict is contrary to the overwhelming weight of the evidence. An appellate court "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). We must "view the evidence in the light most favorable to the verdict," and we must affirm unless "[t]he trial court . . . abuse[d] its discretion in denying a new trial[.]" *Id*. at 844-45 (¶19).

¶6. To prove aggravated assault, the State generally has to prove beyond a reasonable doubt that a "defendant (1) attempted to cause or purposely or knowingly caused bodily injury to another (2) with a deadly weapon." *Duke v. State*, 146 So. 3d 401, 405 (¶16) (Miss. Ct. App. 2014) (citing Miss. Code Ann. § 97-3-7(2)(a)(ii) (Supp. 2013)). It is undisputed that Bradley purposely stabbed David with a pocketknife multiple times. But since Bradley successfully requested a self-defense instruction, the prosecution also had to prove that he did not act in necessary self-defense. *Id*. at 405-06 (¶16).

¶7. The jury heard testimony that Cassandra and Bradley were arguing because he left on her birthday, she was not able to get in touch with him for hours, and he did not come back

3

home until well after 2 a.m. Bradley testified that while he was in the bedroom, he was saying that Cassandra did not "make [any] motherf----- sense," and that her concerns were "nonsense" and "dumb s---." Cassandra testified that she "shut down" and got quiet because Bradley made her feel "intimidated."

¶8. According to David, Bradley was "outraged," "wild," and a "loose cannon" that night, and he had never seen Bradley act that way.[2] David also said that Bradley was "fussing" at Cassandra, and he was "talking loud [and] hollering." Although Bradley testified that he was not angry when he got home, given the testimony to the contrary and the circuit judge's instruction that the jurors could "draw such reasonable inferences from the evidence as seem justified in light of [their] own experiences," the jury could certainly have concluded otherwise.

¶9. It is undisputed that David eventually spoke up and injected himself in the situation. The jury could have concluded that Bradley was angry about David's involvement; especially since Bradley testified that he told David that he would "say anything [he] want[ed] to in this motherf-----," and told David not to get involved in his relationship. It is undisputed that the resulting verbal exchange became physical, and Bradley stabbed David multiple times. Bradley testified that David attacked him first. But David testified that he was still lying on a couch when Bradley suddenly charged from the bedroom and attacked him. Cassandra also testified that Bradley ran into the living room while David was still on the couch.

¶10. Bradley's testimony was inconsistent regarding when he got out his knife and stabbed

_____

[2] Bradley also testified that he had never had a problem with David before that night.

4

David. According to Bradley, David started the fight when he "scooped [Bradley] up" and "drove" him onto one of the couches in the living room. Initially, Bradley testified that he got out his knife and stabbed David only after David began choking him. But during cross-examination, Bradley testified: "When [David] took me off my feet, [and] had me in the air, before we could land on the couch because when I held him [be]cause I'm in the air[,] . . . . [t]hat's when I pulled my knife. And *by the time I landed on the couch, that's how he got the stab in his side*." (Emphasis added). Later during cross-examination, Bradley testified that "[w]hen [David] swooped [him] up off [his] feet, that's when [he] stabbed" David.

¶11. To summarize, the jury could have found that Bradley's version of events was not credible because he first said he stabbed David only after being choked, he later said he stabbed David after they landed on the couch but before he was choked, and he finally said he stabbed David before they even landed on the couch. Given David's and Cassandra's testimonies that Bradley charged and attacked David first, David's testimony that Bradley was hiding one of his hands behind his back before their altercation, and Bradley's inconsistent version of events, the jury could have concluded that Bradley initiated the fight, and that he had armed himself before the fight began.[3]

---

[3] The prosecution introduced Bradley's knife into evidence, but it was not transmitted with the appellate record. *See* M.R.A.P. 11(d)(1)(iii) ("[P]hysical exhibits[,] other than documents, shall not be transmitted by the trial court clerk unless the clerk is directed to do so by a party or by the clerk of the [Mississippi] Supreme Court."). Sold under the brand "Tac Force," it was described as a "pocket knife." Officer Jarrod Smith of the Hattiesburg Police Department testified that he recovered the knife from Bradley's pocket. It is reasonable to conclude that it would have been necessary for Bradley to unfold or open it before he stabbed David. There was no testimony regarding whether Bradley could have opened the knife with one hand, or whether it would have been necessary for him to use both hands.

¶12. The circuit court instructed the jurors to "use [their] good common sense and sound honest judgment in considering and weighing the testimony of each witness who . . . testified in this case." "[An appellate court] will not pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief." *Jones v. State*, 95 So. 3d 641, 647 (¶20) (Miss. 2012) (citation and internal quotations marks omitted). "[T]he members of the jury act as the finders of fact." *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000). "They are charged to listen to the evidence, observe the demeanor of the witnesses, and decide the issue of the credibility of the witnesses and what weight to give to any particular piece of evidence." *Id*.

¶13. Bradley notes he left the house and called 911, David was going to chase him out of the house before Cassandra intervened, and he was cooperative when emergency responders arrived. But the jury could have reasonably decided that Bradley's and David's behavior after the altercation was outweighed by the evidence that Bradley attacked David first. And the jury's verdict is not contrary to the weight of the evidence simply because David was confronted with what seemed to be a medical record – the document was not introduced into evidence – reflecting that David had told a medical provider that he "witnessed [Bradley] arguing and fighting with [Cassandra,] and [he] jumped on [Bradley] and choked him." David testified that he did not remember saying that. Even if David had given a prior inconsistent statement, that would not prevent the jury from deciding that he was more credible than Bradley. *See id*. at (¶10). "The jury's discretion in choosing whether to accept all or part of a witness's testimony is unfettered." *McIntosh v. State*, 749 So. 2d 1235, 1241

(¶23) (Miss. Ct. App. 1999).

¶14.    Viewing the evidence in the light most favorable to the verdict, the jury could have reasonably found Bradley guilty of aggravated assault. Allowing the jury's verdict to stand does not sanction an unconscionable injustice. It follows that the circuit judge did not abuse his discretion when he denied Bradley's motion for a new trial. Accordingly, this issue is meritless.

## II.    Whether the prosecution used a "send a message" closing argument.

¶15.    According to Bradley, the prosecution made improper "send a message" comments during its closing argument. Out of the remarks that Bradley highlights, the following comments are the only ones that resemble a "send a message" argument:

> [When a disagreement] goes beyond [a] normal argument, tussle, fight, or somebody wrestling in the living room, there has to be a level of accountability[, be]cause once we move past that point where there is no level of accountability and a person can be stabbed in the back . . . five times, and we can't evaluate that to determine what the facts are, [then] we're in a society that would have a significant amount of problems . . . .    [J]ustice . . . has to come if we want to live in a society[,] in a town, in a city, in a country that's fair - - that everybody feels safe.
>
> . . . .
>
> That's that normal family dispute that crosses that line that cannot be okay in a functional society. It simply can't. Good citizens have to say we're not going to have that mess in our society.

¶16.    As a threshold matter, we note that there was no objection to any portion of the prosecution's initial or rebuttal closing argument. Consequently, this issue is procedurally barred. *Jackson v. State*, 174 So. 3d 232, 238 (¶17) (Miss. 2015). An appellate court will only find plain error under circumstances where the comments at issue were "so

7

inflammatory that the trial judge should have objected on his own motion." *McCoy v. State*, 147 So. 3d 333, 344-45 (¶29) (Miss. 2014).

¶17. An appellate court "must determine whether the natural and probable effect of the improper argument creates an unjust prejudice against the accused resulting in a decision influenced by the prejudice so created." *Id*. at 345 (¶29). Guided by jury instructions, jurors must decide whether the prosecution presented evidence that the accused is guilty of a charged crime. *Grindle v. State*, 134 So. 3d 330, 347 (¶71) (Miss. Ct. App. 2013). A prosecutor may not encourage jurors to reach a guilty verdict to send a message to the public or other potential criminals, or "reach a verdict for the purpose of meeting public favor." *Id*. at 347-48 (¶71). Thus, even in the absence of an objection, reversible error may result from a prosecutor's closing argument that a jury should "[s]end a message to . . . older, more mature, criminals . . . [that 'w]e are not going to let you ruin young people's lives . . . .'" *See Payton v. State*, 785 So. 2d 267, 270-72 (¶¶9-15) (Miss. 1999) (citations omitted).

¶18. The prosecutor did not urge jurors to use their verdict to send a message to anyone. Instead, the prosecutor argued that the evidence showed Bradley was guilty, his behavior was not merely a family dispute but unacceptable and unreasonable, and the jury should hold him accountable. It was permissible for the prosecutor to reiterate the jury's duty as set forth in the jury instructions. *See Long v. State*, 52 So. 3d 1188, 1194 (¶20) (Miss. 2011). As such, the comments at issue were not improper – much less so inflammatory that the circuit judge should have objected on his own motion. Accordingly, this issue is procedurally barred.

¶19. **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY**

8

**YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $2,500 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**