MAXWELL, J.,
for the Court:
¶ 1. Peter Grossley appeals after being convicted of aggravated assault and armed robbery based in part on accomplice testimony. He argues that the testimony was *1146 suspect and contradictory and that both convictions should be reversed. While there are some inconsistencies in the accomplices’ testimonies, we find their testimonies are sufficiently corroborated by other evidence to support both convictions. Thus, we reject his challenges to the sufficiency and weight of the evidence and affirm.
Facts and Procedural History
¶ 2. On July 25, 2007, Thomas Moore and Grossley allegedly hatched a plan to rob the Northpark Discount Package Store in Ridgeland, Mississippi. Shortly after discussing the robbery, the two picked up their friend Carey Dobbs, whom they let drive Moore’s rented Chevrolet Malibu. The group next picked up another friend of theirs, Dianne Barnes, an admitted prostitute, who had just met with a client at a nearby Cabot Lodge hotel. As the crew left the hotel and drove towards the liquor store, Moore noticed there were no customers in the store. Believing this was the perfect opportunity to rob the store, Moore had Dobbs pull into the liquor store’s parking lot and told Grossley, “Let’s do it.” At this point, Moore and Grossley concealed their faces with bandanas. Moore got out of the vehicle first, followed a bit after by Grossley. Moore approached the store with his pistol drawn, while Grossley waited behind him providing cover.
¶ 3. Just as Moore walked through the door and raised his .38 revolver, Marshall Williams, the store’s owner, opened fire with his .38-special handgun. As Moore retreated, Grossley allegedly fired several shots in Williams’s direction. Though Williams could not say which of the two masked men actually fired, officers were able to recover two .32 caliber projectiles and numerous .32 caliber bullet fragments from inside the liquor store.
¶ 4. Based on a description given by a security guard working at the Cabot Lodge, officers traced the getaway vehicle to the rental-car company Moore had used. Moore initially denied involvement, but after Williams later identified him from a photographic lineup, Moore admitted participating in the robbery. According to Moore, he had used a .38 caliber revolver while Grossley brandished and fired a .32 caliber revolver. Moore claimed that after the botched heist he threw his .38 caliber revolver in the Ross Barnett Reservoir. With Moore’s assistance, the Ridgeland Fire Department’s dive team recovered the .38 caliber revolver in the lake near Moore’s houseboat.
¶ 5. Moore also implicated Grossley, whom he knew as “Kalo,” and Barnes in the robbery attempt. Grossley, who had allegedly fired the pistol into the store, was charged with aggravated assault and armed robbery, while Moore and Barnes— who both testified at Grossley’s trial — pled guilty to lesser charges and received sentencing recommendations from the State. Moore pled guilty to simple robbery and received a fifteen-year sentence, with the last eight years suspended. And Barnes worked out a deal to plead guilty as an accessory after the fact and received a six-month sentence.
¶ 6. At Grossley’s trial, Moore testified that Grossley had covered his retreat from the liquor store by firing a .32 caliber revolver several times in the liquor-store owner’s direction. Moore also testified that Grossley commented that “if [Gross-ley] wouldn’t have fired then maybe [Moore] would have gotten shot.”
¶ 7. Barnes also testified at Grossley’s trial. Though she denied seeing Grossley with a gun on the night of the attempted robbery, she did remember Moore and Grossley quickly returning to the car after several gunshots were fired. Barnes also *1147 heard Moore tell Grossley to check for bullet wounds as they drove away from the store.
¶ 8. Grossley was convicted of aggravated assault and armed robbery. He was sentenced to twenty years on the aggravated-assault charge, with nineteen years suspended, and forty years on the armed-robbery charge, with ten years suspended and five years of supervised probation. The court ordered Grossley’s sentences to run consecutively. The circuit court denied Grossley’s motion for a judgment notwithstanding the verdict (JNOV) or alternatively a new trial.
Discussion
I. Sufficiency and Weight of the Evidence
¶ 9. On appeal, Grossley argues he was entitled to a directed verdict because the State presented insufficient evidence on either count. Alternatively, he requests a new trial, claiming the jury’s verdict was against the overwhelming weight of the evidence.
A. Sufficiency of the Evidence
¶ 10. The purpose of a motion for a JNOV is to test the sufficiency of the evidence. Smith v. State, 839 So.2d 489, 495 (¶ 11) (Miss.2003). When addressing the legal sufficiency of evidence, we consider all evidence in the light most favorable to the State. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). Credible evidence consistent with guilt must be accepted as true. McClain v. State, 625 So.2d 774, 778 (Miss.1993). We are instructed to give the State the benefit of all favorable inferences reasonably drawn from the evidence. Jones v. State, 20 So.3d 57, 64 (¶ 16) (Miss. Ct.App.2009) (citing Hughes v. State, 983 So.2d 270, 275-76 (¶¶ 10-11) (Miss.2008)). “The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush, 895 So.2d at 843 (¶ 16) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

1. The Charged Offenses

¶ 11. There were two substantive counts in Grossley’s indictment, one charging aggravated assault, the other armed robbery. To prove an aggravated assault, the State had to show Grossley “attempt[ed] to cause or purposefully or knowingly cause[d] bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.”[1] The armed-robbery count, on the other hand, required proof of: (1) a felonious taking or attempt to take (2) from the person or from the presence (3) the personal property of another (4) against his or her will (5) “by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon.” Miss.Code Ann. § 97-3-79 (Rev.2006).
¶ 12. In addition to the substantive-count instructions, the trial judge also instructed the jury on accomplice liability. Under this long-recognized theory of criminal liability, the jury was entitled to find Grossley guilty of aggravated assault and armed robbery by merely finding Grossley had aided or acted in concert with Moore in the robbery attempt. See King v. State, 47 So.3d 658, 663 (¶ 18) (Miss.2010).
*1148 2. Grossley ⅛ Challenge to the Accomplice Testimony
¶ 13. Grossley first takes issue with the accomplice testimony. As he sees it, because the store owner did not identify him as the second gunman, the State’s case rested solely on the substantially impeached, self-contradictory, uncorroborated accomplice testimony of Moore and Barnes, which Grossley claims is insufficient to sustain his convictions.
¶ 14. Generally, uncorroborated accomplice testimony may be sufficient to convict a defendant. Osborne v. State, 54 So.3d 841, 846 (¶ 22) (Miss.2011). However, this general premise “is inapplicable in those cases where the testimony is unreasonable, self-contradictory or substantially impeached.” Id. (quoting Ballenger v. State, 667 So.2d 1242, 1253 (Miss.1995)). The Mississippi Supreme Court has been clear, though, that “[o]nly slight corroboration of an accomplice’s testimony is required to sustain a conviction.” Id. at 847 (¶ 22) (citing Mangum v. State, 762 So.2d 337, 342 (¶ 12) (Miss.2000)). The particular testimony needing corroboration is the portion tying the defendant to the crime. Id. (citing Holmes v. State, 481 So.2d 319, 322 (Miss.1985)).
¶ 15. Our review shows the accomplice testimony implicating Grossley in both crimes was neither unreasonable, nor self-contradictory or substantially impeached. While there were some inconsistencies between the two accomplices, their testimonies were in large part corroborated by the store owner, Williams, and other evidence. For example, Williams testified about a second African American male standing next to the getaway car during the attempted robbery. That man’s face, like Moore’s, was covered with a bandana. Unbeknownst to Williams at the time, Grossley and Moore were the car’s only African American occupants. Dobbs, the driver of the Malibu, is a white male, and Barnes is a female of Asian descent. So Williams’s description of the second masked man tends to support Moore’s testimony that Grossley participated in the attempted robbery.
¶ 16. Second, officers recovered several spent .32 caliber projectiles from inside Williams’s store. At trial, the State’s ballistics expert testified that these bullets had unquestionably been fired from a .32 caliber revolver — not the .38 caliber revolver Moore claimed he displayed during the failed robbery then threw in the lake. We find this forensic evidence, when taken in the light most favorable to the State, more than “slightly corroborates” Moore’s testimony that Grossley provided cover during the robbery attempt by firing a .32 caliber revolver at Williams. The evidence that Grossley shot at the store owner is also sufficient to support the aggravated-assault charge.
¶ 17. Furthermore, even if the jury believed that Moore, not Grossley, was the more culpable of the two, since he had planned the robbery and actually entered the store, the evidence was sufficient to find Grossley guilty under an accomplice-liability theory, on which the jury was instructed. There is sufficient record evidence to establish that Grossley, who had donned a bandana to cover his face and was providing cover to Moore, was “present, consenting, aiding, and abetting the commission of the crime charged.” Brooks v. State, 763 So.2d 859, 862 (¶ 7) (Miss.2000). Thus, we find the accomplice testimony, when combined with the other eyewitness and expert testimony, as well as the physical evidence, is sufficiently corroborated to support both convictions.
B. Weight of the Evidence
¶ 18. Grossley next challenges the weight of the evidence supporting his con- *1149 vietions and requests a new trial. His basis for doing so is similar to his attack on the sufficiency of the evidence — his skepticism toward the accomplice testimony.
¶ 19. A motion for a new trial challenges the weight of the evidence. Bush, 895 So.2d at 844 (¶ 18). “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)). When considering an objection to the weight of the evidence, we view the evidence in the light most favorable to the verdict and “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (citation omitted).
¶ 20. We disagree with Grossley that the verdicts were against the weight of the evidence. While there were some discrepancies between Moore’s and Barnes’s testimonies, this is simply not enough to find sustaining the verdict would be “an unconscionable injustice.” And we note that Moore and Barnes were consistent if not identical on some material matters. For example, both Moore and Barnes agreed on the participants’ seating arrangements in Moore’s rental car both before and after the attempted robbery. They also agreed the only two African American males in the vehicle were Moore and Grossley. Both also similarly described the sequence of events immediately proceeding the shootout. Also, Barnes was not in the vehicle, when Moore and Grossley supposedly discussed the robbery.
¶21. But perhaps most important to our review is the fact that the jury was free to accept the testimony of one accomplice over the other’s, as “issues of weight and credibility of a witness’s testimony are within the sole province of the jury as fact-finder.” Price v. State, 23 So.3d 582, 586 (¶ 17) (Miss.Ct.App.2009) (quoting King v. State, 798 So.2d 1258, 1262 (¶ 14) (Miss.2001)). Here, the jury witnessed the cross examination of both Moore and Barnes and obviously gave some weight to their testimony, particularly Moore’s. Because their testimony was more than slightly supported by corroborating eyewitness testimony and forensic evidence, we find neither verdict was against the weight of the evidence.
II. Ineffective Assistance of Counsel
¶ 22. Grossley also claims his trial counsel was ineffective for failing to request a cautionary instruction about accomplice testimony and for not objecting to prejudicial statements made by the State during closing arguments.
¶ 23. To prove ineffective assistance of counsel, Grossley must show: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Grossley to show both prongs. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052.
¶ 24. After review, we find neither of Grossley’s claims are sufficiently developed on direct appeal, as they indeed may have been trial strategy. As to Grossley’s first claim, that his lawyer was ineffective for failing to seek a cautionary *1150 instruction about accomplice testimony, the decision whether to grant such an instruction is discretionary with the trial judge. Our supreme court recently “clar-if[ied] that for a defendant to be entitled to a cautionary jury instruction, it is only necessary that the accomplice’s testimony be uncorroborated.” Williams v. State, 32 So.3d 486, 491 (Miss.2010) (emphasis added). And here we have found the accomplices’ testimony at least slightly corroborated by eyewitness testimony and forensic evidence, so giving such an instruction was discretionary on the trial judge’s part — not mandatory.
¶ 25. Grossley’s other accusation concerns his attorney’s failure to object to what he deems improper remarks by the State during its closing argument. The State argued that Grossley’s attorney essentially defended the case on the premise that Grossley was not even present during the robbery attempt and that Moore and Barnes roped him in to limit their criminal liability when seeking more lenient plea deals. Though there was no objection to this line of argument at trial, Grossley now claims the State impermissibly mentioned that his mere “presence” was enough to convict him of both counts. From our review, this was not the context of the State’s argument, and apparently Gross-ley’s trial counsel did not think so either.
¶ 26. Our appellate courts have been instructed to ‘“strongly presume that counsel’s conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy. In other words, defense counsel is presumed competent.’ ” Liddell v. State, 7 So.3d 217, 219-20 (¶ 6) (Miss.2009) (quoting Bennett v. State, 990 So.2d 155, 158 (¶ 9) (Miss.2008)). Here, we find nothing to overcome this presumption, but the record is not as developed as it would be in a post-conviction relief proceeding. So we find Grossley’s ineffective-assistance claim would be more appropriately brought in a petition for post-conviction relief, if he chooses to do so. Accordingly, we deny relief on this issue without prejudice.
¶ 27. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS, WITH NINETEEN YEARS SUSPENDED; AND COUNT II, ARMED ROBBERY, AND SENTENCE OF FORTY YEARS, WITH TEN YEARS SUSPENDED, TO RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOLLOWED BY FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

. Miss.Code Ann. § 97-3-7(2)(b) (Rev.2006). Effective July 1, 2012, section 97-3-7(2) was amended. 2012 Miss. Laws ch. 514, § 8 (H.B.780). The aggravated-assault provision applicable in this case, which had been codified as section 97 — 3—7(2)(b), is now codified as Mississippi Code Annotated section 97-3-7(2)(a)(ii) (Supp.2012).