# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-02009-COA

**LEROY HARRIS**                                                                 **APPELLANT**

v.

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/2013 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRANDON ISAAC DORSEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ARMED ROBBERY AND SENTENCED TO TWENTY YEARS, WITH FIFTEEN YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, AND  CONVICTED OF A FIREARM ENHANCEMENT AND SENTENCED TO FIVE YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 08/18/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND MAXWELL, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     Leroy Harris appeals his armed-robbery conviction complaining that his speedy-trial right was violated.  He also challenges an evidentiary ruling and contests the sufficiency and weight of the evidence supporting his conviction and firearm enhancement.  After review,

we find no error and affirm.

## Facts

¶2.     On April 23, 2011, Rosella Jing left her family-owned furniture store in Greenville, Mississippi, around 5:50 p.m.  While driving home, she thought someone was tailing her.  And as she approached her house, she saw a bright blue truck[1] following her.  The truck pulled into her driveway behind her.  Rosella was very nervous.  She tried to open her garage door, but it did not work.  At this point, she saw a man she later identified as Harris get out of the passenger's side of the truck.   Harris scampered to Rosella's driver's side door and banged on her car window.  When Rosella rolled down her window, Harris waved a gun in front of her and yelled: "Give me your money."  He told her, "If you close the window, you know what I'm going to do with this gun."  Rosella froze, thinking she was "a goner."  And Harris reached through the cracked window and unlocked and opened her door.  He then snatched her purse, sprinted back to the truck, and sped off.  Frightened, Rosella fled to her neighbor's house and called police.

¶3.     Deputy Marvin Marshall was patrolling the area when he received a call about an armed robbery.  As he headed toward Rosella's house, he saw a truck fitting the dispatcher's description, so he pulled it over.  Deputy Marshall got out of his patrol car and grabbed his gun.  Though he ordered the two men to stay in the truck, they threw open the doors and fled.

---

[1] Nathanieal Watkins Jr. testified that he owned the blue truck but allowed his friend, Warren Cunningham, to use it.

The passenger ran north and the driver headed south. Deputy Marshall saw both men's faces before they ran and gave a quick description to dispatch.[2] While other units searched for the robbers, Deputy Marshall stayed with the truck. Soon after, Deputy Mitch Ramage found and arrested the driver, Warren Cunningham. But Harris was still on the run.

¶4. Later that day, a police officer took Rosella to the blue truck, where she identified her purse. Still inside the purse was the $5,000 in cash and $10,000 worth of checks for deposit from Rosella's business. When shown a photo lineup, she identified Harris as the man who robbed her at gunpoint. Rosella had a good view of Harris and was certain he was the robber. Rosella also testified that she knew the driver, Cunningham, because he had worked at their store as a warehouse man. A month earlier, Rosella had fired Cunningham for stealing store furniture.

¶5. When searching the truck, investigators discovered a nickel-plated pistol[3] on the passenger seat. Deputy Ramage also recovered latent fingerprints from the passenger-side outside door handle. A forensic expert testified that the recovered prints matched Harris's.

¶6. Investigators also found a cell phone on the passenger seat. The cell phone's screen saver was a photo of Harris with the caption "Tony the Tiger." Deputy Jeffrey Parson matched the phone with Harris's mother's address. And authorities later caught and arrested

---

[2] He testified that the passenger was wearing a white shirt and jeans, while the driver was wearing a brown top with khaki pants.

[3] Starks Hathcock, a forensic scientist specializing in firearm identification, examined the Clerke First .32 caliber revolver recovered from the truck. He testified the firearm functioned as designed.

Harris there that night. Harris admitted the photo on the phone was of him and that his nickname was "Tony the Tiger."

¶7. A grand jury charged Harris and Cunningham in a two-count indictment with armed robbery and a firearm enhancement. Harris opted for a trial, and the jury found him guilty. For the armed-robbery conviction, he was sentenced to serve twenty years in Mississippi Department of Corrections custody, with fifteen years to serve and five years of post-release supervision. The judge tacked on five years for the firearm enhancement, which he ordered to run concurrently to his armed-robbery sentence. After an unsuccessful motion for a judgment notwithstanding the verdict, Harris appealed.

**Discussion**

### I. Speedy Trial

¶8. Harris's chief argument is that the delay between his arrest and trial violated his right to a speedy trial. But the circuit judge disagreed, noting in his order that Harris—who was jointly indicted with Cunningham—sat idly without seeking a severance from Cunningham until just before trial.[4] Harris also failed to object to or show a lack of "good cause" for the several trial continuances sought by his codefendant. And Harris never set a hearing on his speedy-trial demand.

¶9. As support for his denial of Harris's motion to dismiss, the judge cited these reasons

---

[4] Harris waited until the brink of trial to seek a severance, two days after his motion to dismiss for failure to provide a speedy trial was denied.

and the lack of any prejudice to Harris. The judge also believed Harris was gaming the system. To the judge, it appeared Harris had tried to avoid trial and a possible conviction—by not objecting or requesting a severance in the midst of his ill codefendant's various continuance requests—and was now trying to benefit from this post-arrest delay.

¶10. The circuit judge's findings were part of his thorough speedy-trial analysis, which we now review.

### A. Events

¶11. There are several relevant dates for our analysis. On April 23, 2011, Harris and Cunningham were arrested for armed robbery. Both men were appointed counsel on April 28, 2011. On June 2, 2011, Harris's public defender filed a general demand for a speedy trial. Around this time, Harris, upset with his attorney, filed a bar complaint against him. He also filed a pro se motion to remove his court-appointed lawyer on December 14, 2011. On June 12, 2012, a grand jury returned an indictment against Harris and Cunningham charging both with the armed robbery of Rossella and a firearm enhancement. And Harris waived indictment and entered a not-guilty plea. On December 6, 2012, Harris filed a motion to dismiss for failure to provide a speedy trial.

¶12. On December 17, 2012, the court entered an order setting trial for February 20, 2013. But the State sought a continuance to find an interpreter for Rosella, who mainly spoke Mandarin Chinese. Harris's attorney agreed to the continuance to locate an interpreter, which the circuit court granted. On February 25, 2013, the court entered its first order

5

resetting trial for May 21, 2013.

¶13.    On April 30, 2013, Harris wrote the court clerk, requesting that his December 6, 2012 motion to dismiss be granted.  That same day, his codefendant, Cunningham, sought a continuance.  There is no record that Harris objected to this continuance.  Cunningham's motion was granted, and their trial was continued until July 23, 2013. Cunningham requested three more continuances, to which Harris did not object.  And the circuit judge continued their trial, first to July 23, 2013, then October 1, 2013, and once again to November 13, 2013.

¶14.    In the interim, on August 6, 2013, Harris asked the court to set a hearing on his "Motion to Dismiss for Failure to Provide a Speedy Trial."  And on October 1, 2013, the court held a hearing on Harris's motion to dismiss.  After conducting a speedy-trial analysis, the circuit judge entered an order denying Harris's motion on October 14, 2013.

¶15.    Two days later, on October 16, 2013, Harris, for the first time, filed for a severance of trial from his codefendant, Cunningham.  The court granted him a severance, and Harris's trial started on November 13, 2013.

### B.    *Barker* Balancing Test

¶16.    The right to a speedy trial is a constitutional right under the Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890. The speedy-trial right attaches when an individual is accused.  *Stark v. State*, 911 So. 2d 447, 450 (¶7) (Miss. 2005).  Mississippi also guarantees a statutory right to a speedy trial, which requires "an accused be brought to trial within 270 days of arraignment unless there is a

showing of 'good cause.'" *Lipsey v. State*, 50 So. 3d 341, 352 (¶35) (Miss. Ct. App. 2010) (citing Miss. Code Ann. § 99-17-1 (Rev. 2007)).

¶17. Though the analysis of a speedy-trial violation sounds simple, "[t]he right to a speedy trial is a more vague concept than other procedural rights." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). And it is "impossible to determine with precision when the right has been violated." *Id.* The United States Supreme Court has cautioned that this remedy is "more serious than an exclusionary rule or a reversal for a new trial." *Id*. at 522. This is so because application of the right leads to the "unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived." *Id*. Because of the slippery nature of this right, the Supreme Court announced a four-part "balancing test" to be applied on a case-by-case basis under the particular facts of the case under consideration. *Id.* at 530.

¶18. When a defendant's constitutional right to a speedy trial is questioned, courts must consider "(1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted his right to speedy trial, and (4) whether the defendant was prejudiced by the delay." *Noe v. State*, 616 So. 2d 298, 300 (Miss. 1993) (citing *Barker*, 407 U.S. at 530).

### 1. Length of Delay

¶19. For speedy-trial purposes, a delay of eight (8) months or more is presumptively prejudicial. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989) (citations omitted). Harris was arrested on April 23, 2011—the day of the robbery. And his trial began on November 13, 2013. The circuit judge properly recognized that since this delay was over eight months, a

7

presumption of prejudice arose, requiring consideration of the remaining factors. *Id.* The judge found the length of delay weighed against the State. But "presumptive prejudice cannot alone carry a Sixth Amendment claim[,]" so we must examine "the other *Barker* criteria[.]" *Dogget v. United States*, 505 U.S. 647, 656 (1992).

## 2.      Reason for Delay

¶20.    When the delay is presumptively prejudicial, the burden shifts to the State to show cause for the delay. *Bonds v. State*, 938 So. 2d 352, 356 (¶11) (Miss. Ct. App. 2006). This requires that we decide if the delay should be charged to the State or defendant.

¶21.    While most of the delay is explained, some is not. Securing an interpreter for the victim did cause a delay. But it was not lengthy. There is also some question about the expediency of the State's forensic testing. The State sought further fingerprint and firearm examination, between the time of arrest and indictment. The circuit judge was not certain if forensic testing was promptly completed. Nor are we. So we, like the circuit judge, find any testing-based delay from Harris's arrest until September 20, 2012, weighed against the State.

¶22.    The judge found all delays after September 20, 2012, the date Cunningham requested his first continuance, were for valid reasons. From this point, the judge attributed much of the delay to Harris for not seeking severance from his codefendant, Cunningham, who obtained several continuances while he was suffering a serious illness. There is authority supporting the judge's view that Harris's acquiescence to Cunningham's good-cause-based

8

continuances can be held against him.

¶23.    Generally, continuances granted to a codefendant for good cause operate as good-cause delays as to jointly charged defendants.  *Horton v. State*, 726 So. 2d 238, 246 (¶31) (Miss. Ct. App. 1998).[5]  And Harris offered no evidence that his codefendant's continuances were not for good cause.  Nor is there record evidence to refute the judge's finding of good cause.

¶24.    The judge found these continuance-based delays weighed against Harris, particularly since Harris did not seek a severance until just before trial.  This court reached a similar conclusion in *Bates v. State*, 886 So. 2d 4, 8 (¶11) (Miss. Ct. App. 2004), where we found a defendant's failure to seek a severance or object to continuances granted to his codefendant cut against the defendant's speedy-trial claim.

¶25.    So we agree with the trial judge that some delays are attributable to the State and others to Harris.  We find this factor slightly favors Harris.

### 3.    Assertion of Right to Speedy Trial

¶26.    While shortly after Harris's arrest his attorney made a general demand for a speedy trial, neither Harris nor his attorney set the motion for a hearing.  This neglect is important to our analysis, since the defendant has a duty to seek a ruling on a motion demanding a

---

[5] This would not have been the case if Cunningham's continuances were not for good cause.  *See Flores v. State*, 574 So. 2d 1314, 1322 (Miss. 1990) (When two or more defendants are tried jointly, continuances granted to one codefendant, which were *not based on good cause*, would not be weighed against another codefendant who had not moved for the continuances.) (emphasis added).

9

speedy trial. *Craft v. State*, 832 So. 2d 467, 471 (¶10) (Miss. 2002); *see also Reed v. State*, 31 So. 3d 48, 57 (¶36) (Miss. Ct. App. 2009) (Motions are not self-executing; the defendant is responsible to seek a ruling.). We do recognize that Harris did file a pro se "Motion to Dismiss for Failure to Provide a Speedy Trial." And he petitioned the clerk, then later sought a hearing on that motion. But the particular remedy he requested in his motion was "dismissal" of his indictment—not a "speedy trial." Our supreme court has emphasized there is a "distinct difference" between the two. "A demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for a speedy trial." *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994); *see also Adams v. State*, 583 So. 2d 165, 170 (Miss. 1991). A motion for dismissal, like Harris's, "seeks discharge[,] not trial." *Id.* We find the circuit judge correctly noted this distinction when denying Harris's motion to dismiss.

¶27. Again, a defendant making a motion, like a speedy-trial demand, must "follow up that action by bringing it to the attention of the judge and requesting a hearing upon it." *Sharplin v. State*, 357 So. 2d 940, 942 (Miss. 1978). It is the movant who bears the responsibility to "obtain a ruling from the court on motions filed by him[,] and failure to do so constitutes a waiver of [the] same." *Martin v. State*, 354 So. 2d 1114, 1119 (Miss. 1978). We find Harris's failure to seek a ruling on his speedy-trial demand weighs against Harris.

### 4. Prejudice to Defendant

¶28. Under *Barker*'s prejudice prong, the three relevant interests are "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and

(iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Of these three, the most serious is the final one, since a defendant's inability to adequately prepare his case "skews the fairness of the entire system." *Id.*; *see also State v. Magnusen*, 646 So. 2d 1275, 1284 (Miss. 1994).

¶29. Harris's pretrial incarceration was no doubt lengthy, but "incarceration alone does not constitute prejudice." *Johnson v. State*, 68 So. 3d 1229, 1245 (¶17) (Miss. 2011). And Mississippi "does not recognize the negative emotional, social, and economic impacts that accompany incarceration as prejudice." *Id.* (citations omitted). Indeed, the sole prejudice alleged by Harris was that his pretrial detention was "anxiety-producing." Yet Harris offers absolutely nothing to support his anxiety claim.

¶30. This lack of support certainly diminishes his supposed anxiety-based prejudice. As our supreme court has put it, "for this prong to favor any defendant, evidence of legitimate anxiety and concern (medical records, documentation from the jail, etc.) must exist." *Id.* And this court will not speculate about the nature of his supposed anxiety.

¶31. Absent evidence of his anxiety, we focus on whether Harris's defense was possibly impaired—the most serious and important consideration in determining if a defendant has suffered prejudices from delay. *Elder v. State*, 750 So. 2d 540, 545 (¶20) (Miss. Ct. App. 1999). "Generally, proof of prejudice beyond incarceration may include such matters as the loss of evidence, death of witnesses, or staleness of the investigation." *Moore v. State*, 837 So. 2d 794, 799 (¶13) (Miss. Ct. App. 2003). However, Harris does not allege any evidence

to support how his defense was impaired, much less prove his assertions. We find, as the circuit judge did, that Harris failed to show how the delay prejudiced his trial in any way. So this factor weighs against Harris.

¶32. Speedy-trial violations are difficult to discern. Because of the "factual specifics" of each allegation, they are "examined and determined on a case-by-case basis." *Brengettcy v. State*, 794 So. 2d 987, 991 (¶7) (Miss. 2001). When the facts here are pared down, Harris simply did not show the delay—which is admittedly lengthy—caused even the slightest impairment to his defense. Based on this, plus Harris's failure to pursue his speedy-trial demand and his acquiescence to his codefendant's continuance requests, we see no error in the circuit judge's finding that, under the totality of the circumstances, Harris's right to a speedy trial was not violated by the delay.

## II. Admissibility of 911 Call

¶33. Harris next argues the circuit court erred in admitting a digital recording of Rosella's 911 call after his counsel objected under Mississippi Rule of Evidence 403. We disagree.

¶34. Under Rule 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. While relevant evidence is generally admissible,[6] it may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,

---

[6] *See* M.R.E. 402.

12

or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403.

¶35. The circuit judge overruled Harris's counsel's objection to admission of the 911 recording. The judge admitted the recording after finding it "passe[d] through the filter of 403." The State then played the recording for the jury. On it, a distressed Rosella reported she had just been robbed by two black men in a blue truck. She told the dispatcher one of the men had a gun.

¶36. Mississippi's evidentiary rules recognize the "excited-utterance" exception to the hearsay rule. M.R.E. 803(2). Under the excited-utterance exception, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is considered admissible. M.R.E. 803(2). The two most important factors are spontaneity and the duration of the excited state. M.R.E. 803(2) cmt.; *see also DeHenre v. State*, 43 So. 3d 407, 418-19 (¶53) (Miss. 2010).

¶37. Rosella had just been robbed at gunpoint and immediately relayed the details during the 911 call. So we find her descriptions to the dispatcher—while she was under the stress of an armed robbery—qualified as an excited utterance. We have upheld admission of a 911 recording where it communicated to the jury the caller's report of a violent situation. *Edwards v. State*, 124 So. 3d 105, 115 (¶42) (Miss. Ct. App. 2013). And here, we find the 911 call was probative since it set in motion a search by authorities for the thieves who had just robbed Rosella at gunpoint. The recording also contained Rosella's description of their

13

vehicle.  We find the trial judge did not abuse his discretion in admitting the 911 recording.

### III.   Sufficiency of Evidence

¶38.   Harris also challenges the sufficiency of the evidence.  To test the legal sufficiency of evidence, "we consider all evidence in the light most favorable to the State." *Grossley v. State*, 127 So. 3d 1143, 1147 (¶10) (Miss. Ct. App. 2013) (citing *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)).  "Credible evidence consistent with guilt must be accepted as true." *Id*.  The State receives the benefit of all favorable inferences reasonably drawn from the evidence. *Id*.  After viewing the evidence in this light, we consider whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.

¶39.   There are five elements of armed robbery.  They are: (1) a felonious taking or attempt to take; (2) from the person or from the presence; (3) the personal property of another; (4) against his will; (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon.  Miss. Code Ann. § 97-3-79 (Rev. 2014).

¶40.   Rosella had a clear view of Harris when he stuck a pistol in her face and grabbed her purse full of cash.  The taking was obviously against her will.  Rosella testified that she could clearly see Harris's face on the other side of her car window.  And she easily identified him from a photo lineup.  When the two men fled from the truck, officers found Harris's cell phone, which displayed his photo as the screen saver, on the passenger seat.  After linking

14

the cell phone to Harris's mother's address, officers arrested him there. Harris's fingerprints matched the prints from the outside passenger handle of the truck. This evidence was also sufficient to show he "used or display[ed] a firearm during the commission of any felony."[7] Miss. Code Ann. § 97-37-37.

¶41. Viewing this evidence in the light most favorable to the State, the evidence was more than sufficient to prove an armed robbery and a firearm enhancement.

### IV. Weight of Evidence

¶42. Harris's next challenge is to the weight of the evidence supporting his armed-robbery conviction and firearm enhancement. He requests a new trial.

¶43. A motion for a new trial challenges the weight of the evidence. *Grossley*, 127 So. 3d at 1149 (¶19) (citing *Bush*, 895 So. 2d at 844 (¶18)). We will grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id*. This court views "the evidence in the light most favorable to the verdict and 'will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id*. (quoting *Bush*, 895 So. 2d at 844 (¶18)).

¶44. For reasons already discussed in section III, we find the weight of the evidence also

---

[7] "Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended." Miss. Code Ann. § 97-37-37(1).

supported the armed-robbery conviction and firearm enhancement.

¶45.    We affirm.

¶46.    **THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

 **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**